Chesapeake, Ohio & Southwestern Railroad Co. v. Griest.

CASE 76—PETITION ORDINARY—MAY 19.

# Chesapeake, Ohio & Southwestern Railroad Co. v. Griest.

APPEAL FROM HARDIN CIRCUIT COURT.

85  619
91  114
85  619
94  381

85  619
e112  497

85  619
d113  722

1. WHERE ONE CORPORATION SELLS TO ANOTHER ALL ITS PROPERTY, FRANCHISES, &c., under authority conferred by its charter, the *bona fide* purchaser for value takes the property free from the claims of creditors of the vendor who have no lien upon the property, just as if it were an individual transaction.

2. WHERE THE PURCHASING CORPORATION UNDERTAKES TO PAY "ALL CURRENT INDEBTEDNESS" incurred by the vendor in the operation of its railroad, the contracting corporations being railroads, even if the contract can be construed to render the purchaser liable for a tort committed by the vendor in the operation of its road, the claim must first be reduced to judgment in an action against the vendor, the corporation which committed the tort.

3. RIGHTS OF CREDITORS OF DISSOLVED CORPORATION.—When a corporation has sold all its property, franchises, &c., and thus in effect been dissolved, the creditors of the corporation may enforce their demands in a court of equity, the proceeds of the property being regarded as assets in the hands of stockholders for the payment of debts.

HOLMES CUMMINS FOR APPELLANT.

1. The instrument under which appellant claims is a deed of bargain and sale from the P. & E. R. R. Co., and does not evidence a consolidation of the two companies, or a merger or amalgamation of the one into and with the other.

   The writing contains all the words, expressions and clauses which are usual in conveyances or deeds. (Bouvier's Law Dict., title Deed; Patterson v. Corneal, 3 A. K. Mar., 620; Chiles v. Conleys, 2 Dana, 23; Young v. Ringo, 1 Mon., 30.)

2. No reference is made in the contract to the provisions of the charters of the two companies empowering them to consolidate the one with the other; reference is made only to those clauses allowing the one to buy and the other to sell.

3. It is not stated in the contract that the companies are consolidated, or that the one is merged or amalgamated into or with the other; and these terms have, when applied to corporate contracts, a technical meaning. (Field on Corporations, sec. 423; Green's Brice's Ultra Vires (2d ed.), pp. 604, 628.)

4. There is nowhere in the charter of the P. & E. R. R. Co., or the statutes of this State, any authority for that company to transfer its *franchises*. (Chap. 1689, Acts 1867; chap. 548, Acts 1867-8.)

Authority to transfer corporate franchises must always be granted in express terms by the Legislature, else no such power can be exercised. (Jones on Railroad Securities, sec. 3; Pierce on Railroads, p. 496 and cases cited; Morawetz on Private Corporations, secs. 536-7; Commonwealth v. Smith, 10 Allen (Mass.), 468; R. R. Co. v. R. R. Co., 13 Allen (Mass.), 422; R. R. Co. v. Kerr, 17 Barb., 581; Black v. Canal Co., 22 N. J. Eq., 130; Angell & Ames on Corp., sec. 191, note 4.)

5. There was not a novation of the rights of the creditors of the P. & E. R. R Co. effected by the contract. No creditor joined in the contract, or assented thereto, and no new evidence of debt has been issued in lieu of any former debts. (Vaughn v. Smith & Co., 58 Iowa, 553; Smith v. Young, 11 B. M., 395; Gresham v. Grant, Sneed, 268.)

If, when one buys at a sale under execution or under a foreclosure of mortgage, he takes the property free from the claims of creditors, much more so where, in good faith, and for a valuable consideration, he buys at private sale; and the rule does not change because the parties are railroad corporations. (Hatcher v. R. R. Co., 69 Ill., 477; Jones on Railroad Securities, sec. 653-661; Smith & Davis v. Gower, 2 Duv., 17; Sapington *et al.* v. The L. R., M. R. & T. R. R. Co., 37 Ark., 23; Hammond v. Port Royal and Augusta Railway Co., 15 Shand., 10; McMahon v. Morrison, 16 Ind., 172; Houston & Texas Central R. R. Co. v. Shirley, 54 Texas, 125.)

6. It was error not to have required the plaintiff to bring the P. & E. R. R. Co. before the court, or, on his failing so to do, to have dismissed his suit. (Commonwealth to use v. Fugate, 1 Mon., 2; Carpenter v. Miles, 17 B. M., 598; Smith v. Lewis, 3 B. M., 230; Allen v. Thomas, 6 Met., 198; Whipple v. R. R. Co. (Kansas), 8 Am. and Eng. R. R. cases, 647-651; Garvin & Co. v. Mobley, 1 Bush, 48; Shawhan v Zinn, 79 Ky., 300.)

7. Appellant, by undertaking to pay "current indebtedness," did not bind itself for any torts committed by its vendor.

"Debt" and "Indebtedness" defined. (Burrill; Bouvier; Worcester; Webster; 3 Blackstone's Com., 154.)

Appellee's claim arises *ex delicto* and not *ex contractu;* and under the *Ca. Sa.* statutes imprisonment for debt could not be had thereon. (73 N. C., 394; 57 Ga., 407; Cooley on Torts, pp. 2-95.)

Appellant is not estopped to deny that by assuming "current indebtedness" it included that claimed by plaintiff. (Gordon v. Gordon, 1 Met., 285; Clay v. Clay, 3 Met., 552; Burdit v. Burdit, 2 Mar., 143; Hickman v. McCurdy, 7 J. J. Mar., 562; Sale v. Crutchfield, 8

Chesapeake, Ohio & Southwestern Railroad Co. v. Griest.

Bush, 645; Mershon v. Mershon, 9 Bush, 638; Gowdy v. Lyon, 9 B. Mon., 113; Keith v. Amende, 1 Bush, 459.)

8. American decisions construing and defining consolidations, and on the liability of one corporation for the debts of another whose property it has bought. (Powell v. North Mo. R. R. Co., 42 Mo., 63; Bruffet v. Great Western R. R. Co., 25 Ill., 310; McMahon v. Morrison, 16 Ind., 172; State v. Bailey, 16 Ind., 46; Paine v. R. R. Co., 31 Ind., 283; Clearwater v. Meredith, 1 Wall., 40; Shields v. Ohio, 95 U. S., 319; R. R. Co. v. Maine, 96 U. S., 499; R. R. Co. v. Georgia, 98 U. S., 359; R. R. Co. v. Georgia, 92 U. S., 665; R. R. Co. v. Georgia, 92 U. S., 676; Myer v. Johnson et al., 64 Ala., 603; R. R. Co. v. Shirley, 54 Tex., 125; Prouty v. R. R. Co., 52 N. Y., 363; Shaw v. R. R. Co., 16 Gray, 407; Vilar v. R. R. Co., 17 Wis., 513; Smith v. R. R. Co., 18 Wis., 22; Morgan Co. v. Thomas, 76 Ill., 147.)

J. P. HOBSON on same side.

1. Under the written contract there was not a consolidation of the two companies, but a sale by the P. & E. R. R. Co. to the appellant. The court will disregard the form used by the parties, and adjudge the right according to the real nature of the transaction.

The P. & E. R. R. Co. continued to exist after it sold its property— certainly for the purpose of dividing its assets among those entitled— and, therefore, there was no consolidation. (Morawetz on Corporations, section 1; Nat. Bank v. Insurance Co., 14 Otto, 72.)

The case of Williamson v. R. R. Co., 26 N. J. Eq., 401, commented on.

2. The appellant is not liable, under the contract, for the torts committed by the P. & E. R. R. Co. To hold otherwise is to nullify the legislative grant of the express power to sell, as no purchaser could be found to assume such a burden. (Morawetz on Corporations, sec. 568.)

If it is to be a question of equity, the equity of the *bona fide* purchaser is to be preferred to the plaintiff who slept on his rights. (Morawetz on Corporations, secs. 561, 574.)

The case of H. Ins. Co. v. St. L. & M. O Trans. Co., 14 Rep., 611, commented on.

P. H. DARBY of counsel on same side.

R. C. DAVIS and MATT. O'DOHERTY for appellee.

1. By the execution of the contract relied upon, the corporate existence of the P. & E. R. R. Co. was merged in, or consolidated with, that of the appellant.

As to the nature of a corporation. (Angell & Ames on Corporations, 4th ed., sec. 4; Rordan, &c. v. Canal Co., 18 N. J. Eq., 546; Chitty's Blackstone, book 1, p. 468.)

2. Appellant cannot deny the power of the P. & E. R. R. Co. to make the contract. Courts are slow to hold such a contract *ultra vires*, and will never so hold or declare it at the instance and for the benefit of a party to it who has profited and is still profiting thereby. (Macon & A. R. R. v. Georgia R. R., 63 Ga., 103.

3. Even though the contract when made was totally unauthorized, the court will seize on the slightest circumstance of legislative recognition to uphold it. (McAuley, &c., v. C. C. & I. C. R. R. Co., 83 Ill., 580.)

To the extent that appellant is given the right by its charter to purchase the capital stock and franchises of the P. & E. R. R. Co., its charter must be held to be amendatory to that of the P. & E. R. R. Co. (Phillips v. Cov. & Cin. Bridge Co., 2 Met., 219.)

4. To effect a consolidation of two corporations it is not essential that there should be a transmutation of the *members* of the two corporations into the members of the consolidated company. The consolidation depends rather upon the amalgamation of the franchises and property of the two corporations than upon reducing to one common class the individual stockholders of both. (Williamson v. The New Jersey S'n R. R. Co., 26 N. J. Eq., 401.)

5. The terms "debts" and "contracts" in acts authorizing the consolidation of railroad companies embrace claims founded in tort. (Coggin v. Cent. R. R. Co., 62 Ga., 695; Mildam Foundry v. Hovey, 21 Pick., 455; Haynes v. Brown, 36 N. H., 545.)

6. It was not necessary for appellant to bring the P. & E. R. R. Co. before the court, even if it be conceded that the contract preserved to that company its separate existence. (Warren v. Mobile & Montgomery R. R. Co., 49 Ala., 582: Indianapolis, Cincinnati & Lafayette R. R. Co. v. Jones, 29 Ind., 465.)

The case of Smith & Davis v. Gower, 2 Duv., 17, commented on.

7. One corporation cannot be permitted to organize another and transfer to it all the corporate property without the new corporation, being required to pay all the corporate debts. A distinction with respect to transactions of this character exists between a natural person and a corporation. (Hibernian Ins. Co. v. St. L. & N. O. Trans. Co. (U. S. Cir. Ct.), 14 Reporter, p. 611; Thompson v. Abbott, &c., 61 Mo., 177; Brum v. Merchants' Ins. Co., 16 Reporter, 260.)

8. Appellant by its motion to strike out so much of appellee's petition as claimed damages against the P. & E. R. R. Co. must be held to have agreed that if the facts alleged gave plaintiff any right of recovery, it, appellant alone, and not the P. & E. R. R. Co., was answerable.

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

The appellant, William F. Griest, while in the employ of the Paducah and Elizabethtown Railroad Com-

pany, and running one of its excursion trains from
Cecilia, in Hardin county, to the city of Paducah, was
severely injured by the collision of the engine with
horses upon the track, by which the engine ran off the
road-bed, capsized, crushing and wounding him in a
frightful manner.   He instituted this action against the
Chesapeake, Ohio and Southwestern Railroad Company
and the Paducah and Elizabethtown Railroad Company,
alleging in substance that the injury resulted from in-
sufficient air-brakes, that were defective and so known
to the defendant and unknown to the plaintiff, and
which, if in proper condition, would have enabled him
to check the train and prevent the injury.   His claim
for damages was allowed to the extent of ten thou-
sand dollars against the Chesapeake, Ohio and South-
western Railroad Company alone, the Paducah and
Elizabethtown Railroad Company not being served with
process or appearing in the action.

The Chesapeake, Ohio and Southwestern Railroad
Company was incorporated in the month of January
in the year 1882, and the accident resulting in injur-
ing the plaintiff occurred in July, 1881.

The claim against this corporation is attempted to
be maintained on the idea that by its charter, and
the contract by which it became the owner of the
Paducah and Elizabethtown Railroad Company, the
two were consolidated and constituted the one cor-
poration, and further, that, by the terms of the pur-
chase, the present appellant undertook to discharge
all the liabilities of the Paducah and Elizabethtown
Railroad Company.   A demurrer was filed to the pe-
tition on the ground that it presented no cause of

action against the appellant, and the demurrer over-
ruled. An answer was then filed to the petition, the
first paragraph of which denied any responsibility for
the tort complained of, or for any personal injury
to the employes while engaged in the service of the
Paducah and Elizabethtown Railroad Company, main-
taining that the agreement by which it became the
owner of the last named corporation was a deed of
bargain and sale entered into by both corporations
under their respective charters. The identical ques-
tion in fact is made by this paragraph of the an-
swer that was raised by the demurrer to the petition.
We must look to the writing, therefore, by which the
appellant acquired the Paducah and Elizabethtown
Railroad, to determine the liability of the one for all
the debts and liabilities of the other. The facts al-
leged in the petition constitute a cause of action against
the Paducah and Elizabethtown Railroad Company,
and if the appellant is liable in this case, it must be
by reason of the contract between the two corporations.

The deed of bargain and sale recited that "*the one
has bargained and sold, and by these presents doth
grant, bargain and sell, alien, convey and confirm*
unto the Chesapeake, Ohio and Southwestern Rail-
road, all the railroad and its properties, naming them
specifically, to have and to hold in fee, including "*all
debts, dues and demands of whatever nature due or
to become due to it, and all the rights privileges
and franchises belonging to or appertaining to the
Paducah and Elizabethtown Railroad Company.*"
The consideration for this sale was over seventy thou-
sand dollars in money and two million eight hundred

and fifty-three thousand dollars in negotiable bonds, and the assumption of certain mortgage liens that were upon the road; and further, the appellant "*bound itself to pay all sums lawfully due for taxes, and all current indebtedness incurred by the party of the second part in the operation of the said railroad and property.*"

The Paducah and Elizabethtown Railroad Company was authorized by its charter, with the assent of a majority in value of the stock of the company, to sell or lease its road, and the power to purchase was conferred on the appellant; so no obstacle existed to the consummation of such a transaction but the consent of the stockholders, as provided by the several charters; that consent was obtained, and the legal effect of the agreement was to transfer to the appellant all the rights, property, etc., of the Paducah and Elizabethtown Railroad Company, free from the claims of creditors. It was a *bona fide* purchaser, paying full value for the road—at least the validity of the transaction is nowhere assailed—and in such a state of case we are aware of no rule of law or equity that would follow the property in the hands of a *bona fide* purchaser for the benefit of a creditor who has no lien by law or contract as against it on the property sold. If the corporation had but changed its name, with the same stockholders or with additional stockholders, it would be regarded as the same corporation. Here, however, is a great line of railroad incorporated, under the name of the Chesapeake, Ohio and Southwestern Railroad Company, with responsibilities greater than those belonging to the cor-

poration whose property has been purchased by it,
with different stockholders, and property rights that
were before and after the purchase disconnected from
the interest of stockholders in the corporation pur-
chased ; and it can not be well argued that the two
have consolidated or have each a common interest in
the appellant. No stockholder in the Paducah and
Elizabethtown Railroad Company held stock as such in
the Cheasapeake and Ohio Railroad Company, but, on
the contrary, the stockholders in the Paducah and Eliz-
abethtown Railroad Company were paid off in bonds by
the appellant, extinguishing the existence of all the
property rights of the latter company, and in fact
it may be said to have no longer an existence ex-
cept for the purpose of winding up the affairs of the
company.

A creditor of the corporation, whether from an ex-
press or implied contract, subjects himself, when deal-
ing with it, to the powers conferred by the charter.
If the power to sell is given by the terms of the
grant, the purchaser for value holds the property as
if it had been an individual transaction. There is no
reason for making the distinction, and the rule in in-
dividual transactions should apply as between cor-
porations when the power to sell and purchase is
conferred by the charter. While a dissolution of a
corporation would entitle the creditors to enforce their
demands in a court of equity, or where there is a
consolidation to follow the assets of their debtor
in the consolidated company, still, where there is a
sale of the corporate property, it passes the title as
to all, in the absence of some reservation in the char-

ter protecting the rights of creditors. (Morawetz on Private Corporations, 567, 568, 569.) Where the corporation is dissolved or is consolidated, the assets of the company is a trust fund for the payment of its debts, and may be reached by a court of equity.

What, then, is the remedy of the appellee in this case, in the event he is entitled to a judgment against the Paducah and Elizabethtown Railroad Company?

If a sale in good faith has been made to the appellant —and that is not questioned—the stockholders of the Paducah and Elizabethtown Railroad Company having received a consideration for their stock, would scarcely be permitted to hold the proceeds in their pockets and the debts of the corporation left unpaid. An equivalent has been paid by the appellant in money and bonds that have passed to the stockholders of the old corporation. This must be regarded as assets for the payment of debts, if not already appropriated in that way.

This court held, in the case of Smith & Davis v. Gower, 2 Duvall, 17, that where the property and franchise of a railroad company had been sold under a mortgage, the liabilities of the corporation still existed, and the corporation still lived, at least for the payment of its debts.

It is urged, however, that the appellant undertook to pay the current indebtedness incurred by the Paducah and Elizabethtown Railroad in running its road, and that this embraced the tort complained of, or the liability of the company to the appellee under its implied contract to furnish safe machinery in operating the road. In the case of Coggin v. The Central Rail-

road Company, 62 Georgia, 685, where the one company
absorbed the former, one of the provisions of the act
was, that the living corporation should discharge all
the contracts of the extinct corporation.  There the
court permitted the injured party to sue for a tort, and
to recover on the agreement to pay all the debts, the
reasoning being based on some provision of the Code
in which the word *debts* was used, the court saying
that there was a strong probability that the word was
intended to embrace liabilities of all classes, torts in-
cluded.

Whether the words *"to pay all current indebted-
ness in operating"* the road embraces such a tort as is
complained of in this case is not necessary to be deter-
mined, as we think it evident that before such a recov-
ery could be had some claim should be established
against the party or corporation committing the in-
jury.  If we could construe the words *current indebt-
edness* as meaning what the appellee insists they do
mean, we are not disposed to adjudge that an action
for negligence, in which punitive as well as compensa-
tory damages can be recovered, may be maintained
against one not in existence when the tort was com-
mitted.  This action should have been prosecuted
against the Paducah and Elizabethtown Railroad Com-
pany, for the purpose of establishing the claim, and
then the equity of the appellant as against the stock-
holders of that corporation, or the claim, if any, against
the present appellant, could be asserted.

The case of Powell v. The North Missouri Railroad
Company, 42 Mo., 68, was a case where several railroad
companies were, by an act of the Legislature, merged

into one, and constituted one body, under the name of one of them. It was there held that when, by the terms of the deed, the first corporation was extinguished, and the second only continued to exist, the case was not one of consolidation or amalgamation. There the one orporation was authorized by a majority in interest of its stockholders to transfer its effects, assets, rights and privileges to the North Missouri Railroad Company, and upon such transfer the company was to cease to exist, and the road thenceforth to be styled the West Branch of the North Missouri Railroad, their franchises to be completely vested in the North Missouri Railroad Company. It was there said that the one corporation was absolutely extinguished. It was a matter of contract, and made upon a valuable consideration to a *bona fide* purchaser, and that while a court of equity will not allow a corporation to give away its property to the prejudice of creditors, it will not follow the property into the hands of *bona fide* purchasers. (See also the Eaton & Hamilton R. R. Co. v. Hunt, 20 Ind., 463.)

In this case the appellee is proceeding on the theory that the Paducah and Elizabethtown Railroad no longer exists; that its property and franchises have passed to the appellant by the deed filed with the petition. It has no interest in common with the appellant, nor has any of its stockholders any stock in the new company, and the fact that the president of the appellant was the owner of most of the stock in the Paducah and Elizabethtown Railroad cannot have the effect of making a new and distinct corporation that is a purchaser for value liable for its debts, except as made so by the terms of the sale.

We do not mean to adjudge that one corporation can be relieved of its liabilities by passing its property over to some other company, or that a creditor is deprived of his rights as such in a case where the company liable to him consolidates with another. The right to consolidate cannot be prevented by the creditor, but he may, in such a case, have the assets applied by a court of equity to the payment of his debt, because in effect the corporation is dissolved.

The creditor, in the event the agreement of consolidation bound the consolidated company to pay the debt, could not be compelled to accept the agreement and thereby destroy his right to look to his own debtor; and as said in Morawetz, it has sometimes been held that when a new company is formed by consolidation of several companies, it thereby impliedly assumes the debts and obligations of the old. But this doctrine is not universally accepted, and there seems to be no sufficient reason for implying such an assumption of liabilities, particularly as creditors are not compelled to accept the same. (Morawetz on Corporations, page 558.)

In the present case it is apparent that there was an absolute sale of the Paducah and Elizabethtown Railroad, and the action should have been prosecuted to judgment against the latter company. The demurrer by the appellant should have been sustained.

The judgment is therefore reversed, and cause remanded with directions to sustain the demurrer.