## Kentucky Beaver Collieries, et al. v. Mellon and Smith.

(Decided June 1, 1923.)

### Appeal from Floyd Circuit Court.

1. Contracts—Evidence Held to Warrant Finding Contractors Performed Work in Accordance with Contract.—In an action to recover the balance due for construction of a railroad track to a mine, evidence held to sustain a verdict finding that the retaining wall, which proved, insufficient for the purpose, was constructed in accordance with a sketch prepared by the defendant's engineer, and with his oral instructions, so that the contractor had performed his contract, notwithstanding the defect in the wall.

2. Appeal and Error—Finding of Jury as to Amount Due Contractor Based on Conflicting Evidence Not Disturbed.—Where there was evidence to sustain defendant's contention that the preliminary estimate of the thickness of the wall, on the basis of which a contractor had been paid, was too large, so that the contractor was not entitled to the full amount claimed by him, but there was also abundance of evidence that the estimate was correct, and the wall was of the required thickness a verdict finding for the contractor for the full amount due, will not be disturbed.

3. Corporations—Successor to Contracting Corporation Held to Have Absorbed Original Corporation and Assumed its Liability.—Where

the successor of a coal mining corporation, which made a contract with plaintiff, was largely controlled by the same stockholders and officers as the contracting corporation, and assumed the supervision of the contractor's work, and thereafter filed a counterclaim for damages, it cannot be treated as an innocent purchaser, but must be regarded as having absorbed its predecessor and assumed its liability in taking over its assets.

JOSEPH D. HARKINS for appellants.

A. J. MAY for appellees.

OPINION OF THE COURT BY JUDGE MOORMAN—Affirming.

In the autumn of 1918 the Evans, McVay & Blair Company of Chicago leased a tract of coal land on Prater creek in Floyd county from Walter S. Harkins. They organized a corporation known as the Prater Creek Coal Company. On the day that the lease was taken the Blair Company sublet the property to L. V. Rice, and turned over to him the corporate charter of the Prater Creek Coal Company. Rice made preparation to open a coal mine on the lease and employed Richard Vose, an engineer of Chicago, to superintend the project. The appellees were contractors, and on November 11, 1918, they entered into a contract with "L. V. Rice, trustee for the Prater Creek Coal Company," to construct a railroad siding at the mine "according to plans, profile and section thereof, as prepared by C. G. Evans, mining engineer," agreeing to do the work "in a first-class, workmanlike manner," at specified prices to be paid for the different kinds of work. It was agreed that payments for the completed work less ten per cent should be made semimonthly, according to the estimates of the engineer. As the work progressed appellees were paid according to contract, and on its completion there was due them, according to the final estimate, $2,106.95. Before this sum could be paid it developed that the operation of trains over the track had caused the retaining wall to crumble and necessitated the closing of the track for repairs. Payment of the final estimate having been refused, appellees instituted this action against the Prater Creek Coal Company, the Kentucky Beaver Collieries, and L. V. Rice to recover it. Defendants resisted the suit on the ground that the work had not been done according to contract, and asserted a counterclaim of more than $5,000.00 in damages resulting, as they alleged, from defective construction. They also alleged that the contract was made

with L. V. Rice, and that neither of the other two defendants was liable thereon, and further, that the Kentucky Beaver Collieries was an innocent purchaser of the leasehold for value. These defenses were traversed, and on the trial a verdict was returned in favor of appellees for the amount of their claim, upon which judgment was entered, to reverse which the Prater Creek Coal Company and the Kentucky Beaver Collieries have appealed.

It is contended that the verdict is not sustained by the evidence, in that the contract required the work to be done in "a first-class, workmanlike manner," and it was not so done. On this issue made in the pleadings extensive proof was taken. Appellees admit that if appellants' contention is maintainable they are entitled to damages on their counterclaim, representing the cost of repairing the wall. Under the contract the work was to be done according to plans and profiles furnished by the engineer, C. G. Evans. It appears that Evans never furnished any plans or profiles other than a pencilled sketch, showing the width that the wall was to be built in its various stages of construction. He admitted that he visited the work frequently and made the estimates upon which payments were made, and that he then believed the wall was being erected conformable to the sketch that he had delivered to the contractors. But he said after the wall had fallen he made additional inspections and measurements, which showed that it had not been built according to directions. The latter conclusion was strenuously denied by appellees. Moreover, they testified that they frequently stated to Richard Vose, who was in charge of the entire project, that the wall was not heavy enough, and to these suggestions Vose replied that he had charge of the work, was in a hurry to have it completed, and it was their duty to build the wall as he directed. They further said that Vose saw the work twice a day, examined the wall as it was going up, and approved every feature of its construction. The evidence indicates that it was difficult at times to get in touch with Evans, and that he did not visit the work as frequently as it was contemplated that he should. His laxity in this particular was commented on by the contractors and Vose, and, with a view of avoiding the delay that was inevitable from his conduct, it appears that Vose took upon himself the supervision of the work. Appellees' evidence shows that the wall was not only as thick as but in many places was thicker than the requirements of the sketch furnished by Evans.

The cement used in the masonry is said to have been of an inferior quality, and that fact, with the insufficiency of the quantity, is relied on to sustain the claim of defectiveness. In combating this claim appellees emphasize the point that appellants inspected the work as it was in progress and were able to and did ascertain what quantities of cement were used, notwithstanding which they were satisfied with the work and approved the estimates. They furthermore say that the cement was of the best quality, and the proper quantities were used. On each of the numerous issues touching the claim of defectiveness there was evidence supporting the divergent views of the parties. The questions were fairly submitted to the jury under appropriate instructions, and it found that the work was performed according to contract. That finding is amply sustained by the evidence.

Another ground urged for a reversal of the judgment is: Assuming that the wall was completed according to the requirements of the contract, the balance due was only $304.94. This contention proceeds on the theory that the measurements made by the engineer after the wall had fallen show it was not of the required thickness, and that the former estimates were incorrect. That there is evidence to sustain this contention is unquestionable. On the other hand there is an abundance of evidence justifying the conclusion that the final estimate was correct, and that the wall was of the required thickness and in every respect conformed to appellants' instructions. On this issue the jury accepted appellees' evidence, and we do not feel that there is warrant for disturbing the verdict.

Finally it is contended that the court should have directed the jury to return a verdict for the Kentucky Beaver Collieries because that company was not a party to the contract but was an innocent purchaser for value. In our opinion the contention is not sustainable. While there is evidence to the effect that the Kentucky Beaver Collieries absorbed the properties and assets of the Prater Creek Coal Company, it is not shown that it purchased them for value or without notice of this liability. L. V. Rice was the trustee of and a large stockholder in the Prater Creek Coal Company. He was also largely interested in the Kentucky Beaver Collieries. It appears that after Rose left the mine Whittier, an engineer who seems also to have been president of the Kentucky Beaver Collieries, assumed the supervision of appellees' work. He

acted in respect to the supervision and estimates just as Vose had acted. That company manifested its interest in the contract by asserting a counterclaim against the defendants for defective construction. In these circumstances, it is our opinion that the Kentucky Beaver Collieries cannot be treated as an innocent purchaser, but must be regarded as having absorbed the Prater Creek Coal Company and assumed its liabilities in taking over its assets. Harbison, etc. v. McFarland, 156 Ky. 44; Kentucky D. & W. Co. v. Webb, 181 Ky. 90.

Perceiving no errors in the record prejudicial to appellants' rights, the judgment is affirmed.